<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

―――――――――――――――――――――――
                                                      :
JUSTIN M. CHERRY and MICHELE               :
CHERRY                                              :
                                                      :
                 Plaintiffs,                      :
                                                      :          Civil Action No. 16-0505-BRM-DEA
            v.                                       :
                                                      :
BOROUGH OF TUCKERTON, CHIEF OF :
POLICE MICHAEL CAPUTO, SGT.              :
CHRISTOPHER ANDERSON, JOHN             :          **OPINION**
DOES 1-15 (fictitious names), jointly,        :
severally, and in the alternative,              :
                                                      :
                 Defendants.                    :
―――――――――――――――――――――――:

**MARTINOTTI, DISTRICT JUDGE**

        Before this Court is a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed by

Defendants Borough of Tuckerton (the "Borough" or "Tuckerton"), Chief of Police Michael

Caputo ("Caputo") and Sgt. Christopher Anderson ("Anderson") (collectively, the "Defendants").

(Dkt. No. 11.) Plaintiffs Justin M. Cherry ("Cherry") and Michele Cherry (together, the

"Plaintiffs") oppose the motion.  (Dkt. No. 12.) Pursuant to Fed. R. Civ. P. 78, no oral argument

was heard. For the reasons set forth herein, Defendants' motion is **GRANTED** in part and

**DENIED** in part.

I.   **BACKGROUND**[1]

Cherry is a Corporal and K9 Handler employed by the Tuckerton Police Department. (Am. Compl. (Dkt. No. 3) at ¶ 12.) He became a K9 Handler in May 2008 (*id*. at ¶ 13) and continued to serve in that capacity until February 4, 2014, when Cherry was suspended from his employment, with pay. (*Id*. at ¶ 55.)

Prior to his suspension, Cherry cared for his K9 partner at his home. (Dkt. No. 3 at ¶¶ 13-14.) Cherry alleges he has never received overtime compensation from Defendants for the in-home care of his K9 partner. (*Id*. at ¶¶ 14-15.)

When he became a K9 handler in May 2008, Cherry was required to attend two (2) in-service trainings per month. (Dkt. No. 3 at ¶¶ 16-18.) Beginning in 2011, the Borough elected to reduce the number of in-service training sessions to once per month. (*Id*.) Cherry objected to the Borough's decision based on his understanding that it was "the common practice for K9 handlers in New Jersey performing both scent and patrol work" to complete two (2) days of in-service training per month. (*Id*. at ¶¶ 17-18.) Sometime in 2011, Cherry "voiced his concern about the in-service training to his supervisors, including the Chief, Michael Caputo." (*Id*. at ¶19.) As a result of these complaints, Cherry alleges Chief Caputo began retaliating against him by, among other things, "conducting himself in a constantly demeaning and harassing manner towards Plaintiff." (*Id*. at ¶ 20.) The first retaliatory act specifically alleged in the Amended Complaint occurred "[i]n October of 2013, . . . [when] Caputo alleged that Plaintiff was involved in hacking his emails." (*Id*. at ¶ 25.)

On January 29, 2014, Plaintiff deployed his K9 partner to apprehend a suspect who had been removed from her vehicle by officers of the Barnegat Township Police Department. (Dkt.

---

[1] The facts set forth in this Opinion are taken from the Parties' briefs and related filings.

No. 3 at ¶¶ 35-36.) The incident was captured by a patrol car's dashboard surveillance camera. (*Id*. at ¶¶ 49, 52.) On February 3, 2014, after obtaining the surveillance video from the Barnegat Township Police Department, Chief Caputo forwarded a copy of the video and an allegedly "incomplete draft" of Cherry's written report about the incident to the Ocean County Prosecutor's Office for review. (*Id*. at ¶ 52.) The following day, Cherry was suspended with full pay and benefits pending the results of the Prosecutor's Office's investigation. (*Id*. at ¶ 55.)

On April 9, 2014, the Ocean County Prosecutor's Office arrested Cherry and charged him with aggravated assault and official misconduct. (*Id*. at ¶¶ 65-66.) That same day, the Borough suspended Cherry without pay and he remains suspended to the present day. (*Id*.)

On or about August 1, 2015, the Borough sent Cherry a "Notice of Employment Discussion" advising him that a council meeting was being held on August 3, 2015 during which his employment would be discussed. (Dkt. No. 3 at ¶¶ 57-61.) Cherry alleges the Borough "intentionally sent the Notice to an address at which [he] had not resided for over five years" in an effort "to deny [Cherry] his Due Process and . . . his right to be present at the meeting at which his employment was discussed." (*Id*. at ¶¶ 62-64.) Plaintiffs do not allege that any adverse employment action was made at, or as a result of, the August 3, 2015 council meeting and, in fact, Cherry's employment has not been terminated pending his trial. (*See id*.)

Plaintiffs commenced this action on January 27, 2016. (Dkt. No. 1.) Prior to filing their complaint, however, Plaintiffs did not serve any of the Defendants with a Notice of Tort Claims. (Defendants' Brief in Support of Motion to Dismiss (Dkt. No. 11-1) at p. 4.) Plaintiffs' original Complaint does not allege a Notice of Tort Claims was served on any of the Defendants. (*Id*.; *see also* Dkt. Nos. 1, 3.) Plaintiffs filed an Amended Complaint on March 3, 2016, that is likewise silent as to whether Plaintiffs ever served a Notice of Tort Claims. (Dkt. No. 3.) Defendants now

move to dismiss Counts I-IV and VI-IX and for partial dismissal of Count V of Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III.   DECISION

### A.   COUNT I: VIOLATION OF 42 U.S.C. § 1983

Cherry alleges a violation of his Fourteenth Amendment rights to due process pursuant to 42 U.S.C. § 1983. (*See* Dkt. No. 3 at 8, ¶¶ 1-10.) Specifically, Cherry alleges that "Defendants, acting under color of State law, violated Plaintiff's Constitutional Right to Due Process . . . [by] alleging a violation of administrative vehicle pursuit policy [and] wrongfully suspend[ing] him without pay." (*Id*. at ¶¶ 2-4.) Cherry further alleges "Defendants denied [him] benefits to which he was entitled, namely health benefits for his dependent son [by] intentionally sen[ding] Plaintiff late notice of a meeting in which his employment would be discussed . . . to the wrong address." (*Id*. at ¶¶ 5-7.) As a result, he "did not receive adequate notice of and missed a council meeting where his employment was discussed." (*Id*. at ¶ 8.)

Section 1983 of Title 42 of the United States Code provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983.

"To establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." *Shuman ex rel Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir.1995) (citing *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993))); *see also Gomez v. Toledo*, 446 U.S. 635, 640

(1980) ("By the plain terms of § 1983, two-and only two-allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

Here, Cherry alleges Defendants deprived him of his right to Due Process by "intentionally sen[ding] [him] late notice of a meeting [at] which his employment would be discussed . . . to the wrong address." (Dkt. No. 3 at ¶¶5-7.) Despite Plaintiffs' contention, however, the United States Supreme Court has held public employees are not entitled to notice and a hearing prior to a suspension without pay if they are arrested and charged with a felony. *Gilbert v. Homar*, 520 U.S. 924, 933-34 (1997) (holding that "the State had no constitutional obligation to provide [plaintiff] with a presuspension hearing"). *See also Biliski v. Red Clay Consol. School Dist. Bd. Of Educ.*, 574 F.3d 214, 223 (3d Cir. 2009) ("Insofar as [plaintiff] contends that he had a constitutional right to present oral responses at a formal hearing, he is mistaken. 'There is no inexorable requirement that oral testimony be heard in every administrative proceeding in which it is tendered.'") (quoting *FDIC v. Mallen*, 486 U.S. 230,  247-48 (citing *Califano v. Yamasaki*, 442 U.S. 682, 696 (1979))) (additional citations omitted). Plaintiffs have, thus, failed to allege the first element of a § 1983 claim; *i.e.*, that Cherry has been deprived of a federal right.

Moreover, the Court finds Defendants' actions also have statutory support. Specifically, N.J.S.A. 40A:14-149.1 provides that, when a police officer is "charged with an offense which is a high misdemeanor or which involves moral turpitude or dishonesty, said officer may be suspended from his duties, without pay, until the case against him is disposed of at trial, until the complaint is dismissed or until the prosecution is terminated." *Id.*

6

In their opposition to the Motion to Dismiss, Plaintiffs simply argue that police officers have a statutory property right to employment protected by the Fourteenth Amendment and, as such, their Section 1983 claim is "sufficiently and specifically pled." (Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. No. 12) at p. 3.) They further request "the opportunity to provide evidentiary support for the[ir] [due process] claims." (*Id*. at p. 4.)

As Plaintiffs concede, however, Cherry has, indeed, been charged with a felony; namely, aggravated assault and official misconduct. (Dkt. No. 3 at ¶¶ 65-66.) He was, thus, not entitled to notice and a hearing prior to his suspension. *See Gilbert*, 520 U.S. at 933-34; *Biliski*, 574 F.3d at 223. Plaintiffs' opposition makes no effort to rebut the statutory basis for Defendants' actions (*i.e.*, N.J.S.A. 40A:14-149.1) and the conclusory allegation that Defendants intentionally sent notice of a council meeting to the wrong address fails to implicate any constitutional rights that would give rise to a Section 1983 claim on due process grounds. Accordingly, Defendants' Motion to Dismiss Count I of the Amended Complaint is **GRANTED**.

### B.   COUNT II: VIOLATION OF N.J.S.A. 10:6-2

In Count II, Cherry alleges Defendants' "continued retaliation, harassment, and denial of benefits [was] without due process" in violation of his "State Constitutional civil rights" (Dkt. No. 3 at 9, ¶¶ 12-13), but adds little, if any, substance to the allegations in Count I. Accordingly, the Court interprets Counts I and II to be analogous claims under the United States and New Jersey Constitutions, respectively. As such, Plaintiffs' claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, *et seq*. ("NJCRA") necessarily fall alongside their Section 1983 claims because "[t]his district has repeatedly interpreted NJCRA analogously to § 1983." *Pettit v. New Jersey*, Civ. A. No. 09–cv–3735 (NLH), 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases). Thus, for the reasons stated above, Plaintiffs have failed to state a claim for violation of the

NJCRA on the grounds that Cherry was denied due process because he allegedly "did not receive adequate notice of and missed a council meeting where his employment was discussed." (Dkt. No. 3 at ¶ 8.) Therefore, Defendants' Motion to Dismiss Count II of the Amended Complaint is **GRANTED**.

### C.   COUNT III: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Cherry alleges he "had an employment contract with [the Borough]" and that "Defendants acted in bad faith in denying [Cherry] benefits and rights pursuant to the employment contract." (Dkt. No. 3 at 10, ¶¶ 16-17.) Specifically, Cherry alleges Chief Caputo provided the Ocean County Prosecutor's Office an "incomplete copy" of his written report and, thereafter, "conspired with others, including Anderson, to effectuate a false investigation . . . with improper and ulterior motive." (*Id*. at ¶¶ 18-19.) Cherry further alleges the Borough acted in bad faith by suspending him without pay. (*Id*. at ¶ 20.)

Defendants argue Count III should be dismissed because the Amended Complaint contains "no allegation regarding the contents of any specific provision in the contract or how Defendants allegedly violated that provision through bad faith." (Dkt. No. 11-1 at p. 9.) In the same breath, however, Defendants acknowledge that "New Jersey law provides that 'every contract . . . contains an implied covenant of good faith and fair dealing,' requiring that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" (*Id*. (quoting *Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 89 (D.N.J. 2014) (quoting *Kalogeras v. 239 Broad Ave., LLC*, 202 N.J. 349 (2010)).)

"The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'"

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assocs.*, 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22, at 513-14). "As a general rule, '[s]ubterfuges and evasions' in the performance of a contract violate the covenant of good faith and fair dealing 'even though the actor believes his conduct to be justified.'" *Id.* (quoting Restatement (Second) of Contracts, §205 (1981), comment d). At a minimum, then, "[p]roof of 'bad motive or intention' is vital to an action for breach of the covenant." *Id.* (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 241, 251 (2001)). Because of "the myriad forms of conduct that may constitute a violation of the covenant of good faith and fair dealing," however, "[e]ach case is fact-sensitive." *Id.* at 225.

Given the "fact-sensitive" inquiry involved in determining whether a party has breached the implied covenant of good faith and fair dealing, at this early stage and drawing all inferences in the facts alleged in the light most favorable to Plaintiffs (as the Court must on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)), the Court finds Plaintiffs have sufficiently pled a cause of action for such breach. The Amended Complaint alleges Cherry's employment was governed by an employment contract, which Defendants do not dispute. That contract necessarily contains an implied covenant of good faith and fair dealing, which Plaintiffs allege was breached by, among other things, Defendants' initiation of "a false investigation of [Cherry] with improper and ulterior motive" and subsequent suspension of Cherry without adequate notice. (Dkt. No. 3 at p. 10, ¶¶ 17-20.)

Because "'evasions' in the performance of a contract violate the covenant of good faith and fair dealing 'even though the actor believes his conduct to be justified,'" *Brunswick Hills*, 182 N.J. at 225, the allegations contained in Plaintiffs' Amended Complaint are sufficient to "survive a motion to dismiss [because] it contains sufficient factual matter to 'state a claim for relief that is

plausible on its face.'" *Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 570). Accordingly, Defendants' Motion to Dismiss Count III of the Amended Complaint is **DENIED**.

### D.    COUNT IV: CIVIL CONSPIRACY

Cherry alleges Defendants "conspire[d] to violate [his] rights by targeting him in retaliation for speaking out with regard to in-service training and Defendants' non-compensation pursuant to the FLSA, and by coordinating stories . . . to incriminate him and rationalize their actions." (Dkt. No. 3 at 11, ¶¶ 23-24.)

Defendants argue Cherry's conspiracy claim is barred by the New Jersey Tort Claims Act due to Plaintiffs' failure to serve Tort Claims Notices on Defendants prior to commencing this action.[2] In opposition, "Plaintiff asserts that a Tort Claims Notice is not needed for a claim of civil conspiracy to [sic] pursuant to § 1983." (Dkt. No. 12 at p. 6.)

The New Jersey Tort Claims Act bars liability for public entities and public employees except in limited circumstances. N.J.S.A. 59:1-1, *et seq*. Under the Act, a claimant must serve a notice of tort claim against a public entity within ninety (90) days of accrual of a cause of action. N.J.S.A. 59:8-81. If a claimant fails to do so, he is "forever barred from recovering against a public entity," absent a showing of exceptional circumstances. N.J.S.A. 59:8-8(a).

A plaintiff is barred from asserting a civil conspiracy claim against a public entity or public employee where, as here, they fail to comply with the notice provisions of the New Jersey Tort Claims Act. *LaPosta v. Borough of Roseland*, 309 Fed. App'x 598, 603 (3d Cir. 2009); *County*

---

[2] In addition to this procedural challenge, Defendants argue that, substantively, Plaintiffs have failed to state a claim for civil conspiracy insofar as the underlying wrong (Cherry's termination) has not yet occurred, and because Chief Caputo and Anderson cannot conspire with their employer, the Borough, and, in all events, were acting within the scope of their employment. (Dkt. No. 11-1 at § IV (A) – (C).) Because Plaintiffs' civil conspiracy claim is procedurally barred, as discussed below, the Court need not address these additional grounds for dismissal.

*Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 175 (3d Cir. 2006); *Calabria v. State Operated School Dist. For City of Paterson*, 2008 WL 3925174 (D.N.J. Aug. 6, 2008).

The Third Circuit has expressly rejected the argument advanced by Plaintiffs: "that to the extent their civil conspiracy claim is predicated on federal and state constitutional violations, the NJTCA does not apply." *County Concrete Corp.*, 442 F.3d at 174-75 ("hold[ing] that appellants were not exempt from the NJTCA notice requirements for their civil conspiracy claim"). In doing so, the Third Circuit explained that "'[u]nlike a claim under 42 U.S.C. § 1985 . . . a conspiracy is not actually an element of a § 1983 claim'" and "that a state tort law civil conspiracy claim is [not] converted into a federal claim or a state constitutional tort merely because it is predicated upon violations of the federal and state constitutions." *Id.* at 174 (quoting *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990))). Like the appellants in *County Concrete*, Plaintiffs here "point to no authority establishing that the NJTCA does not apply to a state law civil conspiracy claim." *Id.*

Because Plaintiffs failed to serve Defendants with a notice of tort claim, and no exceptional circumstances exist for their failure to do so, Defendants' Motion to Dismiss Count IV with prejudice is **GRANTED**.

### E.    COUNT V: VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 207

Cherry alleges the Borough and Chief Caputo violated the Fair Labor Standards Act ("FLSA") by failing to "provide overtime payments for all work time that Plaintiff spent taking care of his police K9 beyond the time of his regular shift." (Dkt. No. 3 at p. 12, ¶¶ 26-33.) Cherry seeks "proper compensation from May 2008 to the retirement of the K9 in December 2015." (*Id.* at ¶ 33.)

Defendants' move for partial dismissal of Count V, arguing that (a) Plaintiffs' claims under the FLSA that accrued prior to January 27, 2014 are barred by the FLSA's two-year statute of limitations, and (b) since Cherry was suspended on February 4, 2014, he cannot recover for unpaid overtime from that date to the present. (Dkt. No. 11-1 at pp. 17-18.)

The FLSA provides, in pertinent part, that a cause of action for overtime wages:

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).

Plaintiffs argue the FLSA's three-year statute of limitations should apply because "Plaintiff is claiming that he was retaliated against . . . [and] asserts that the conduct of Defendants was egregious and willful." (Dkt. No. 12 at p. 8.) Additionally, or alternatively, Plaintiffs assert the doctrine of equitable tolling applies to save their claims. (*Id*. at p. 9.)

Initially, the Court rejects Plaintiffs' equitable tolling argument. As Plaintiffs correctly note, "the equitable tolling doctrine applies in three principal situations in this circuit." (Dkt. No. 12 at p. 9 (citing *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 438 (D.N.J. 2001) (additional citations omitted).) Equitable tolling applies if (1) "the defendant has actively misled the plaintiff," (2) "the plaintiff has 'in some extraordinary way' been prevented from asserting his rights," or (3) "the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Henchy*, 148 F. Supp. 2d. at 438 (citing *Miller v. Beneficial Mgt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992)). None of these situations are present here and both the Amended Complaint and Plaintiffs' opposition papers are silent as to how or why equitable tolling should apply.

The Amended Complaint also makes clear that Cherry cannot recover for allegedly unpaid overtime for the period of time he was not actually working for the Borough, *i.e.*, February 4, 2014

to the present. Similarly, applying either the two or three year statute of limitations, Plaintiffs are barred from recovering unpaid overtime prior to, at least, January 27, 2013 (three years from the date of filing). At this early stage and based on the record before the Court, however, it would be premature to determine which limitations period to apply. The Amended Complaint alleges that Defendants' failure "to pay [overtime] compensation is a knowing, willful, reckless violation of the FLSA." (Dkt. No. 3 at p. 12, ¶ 30.) While this allegation alone would be insufficient to withstand a motion to dismiss, the Amended Complaint alleges a pattern of willful conduct, beginning in 2011, stemming from Cherry's complaints relating to his duties as a K9 Handler. Although generally directed towards Defendants' alleged harassment and suspension of Cherry, drawing all inferences in the light most favorable to Plaintiffs, it is more than plausible that Defendants' willful conduct also included their alleged failure to pay overtime.

Accordingly, Defendants' Motion to Dismiss all claims under the FLSA accruing prior to January 27, 2013 and after February 4, 2014 is **GRANTED**, and Defendants' Motion to Dismiss all claims accruing prior to January 27, 2014 is **DENIED**, without prejudice.

### F.    COUNT VI: VIOLATION OF 42 U.S.C. § 1983

Cherry alleges he was retaliated against for "exercising his First Amendment Rights to Free Speech when he advised his superiors that the conduct of Defendants, in denying [Cherry] the ability to complete in-service training was in violation of law, regulations, and/or public policy." (Dkt. No. 3 at 13, ¶¶ 35-37.) Cherry further alleges "[t]he speech at issue was of public concern because it dealt directly with public safety" and his "interest in exercising his free speech to further public safety overwhelmingly outweighed any interest of Defendants." (*Id.* at ¶¶ 36, 38.)

Defendants argue Plaintiffs' Amended Complaint fails to state a claim for First Amendment retaliation because "the reduction of [Cherry's] in-service hours [is] not a matter of

public concern, [and] the [Amended] Complaint fails to link his speech to any retaliatory action." (Dkt. No. 11-1 at p. 13.)

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citing *Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). "The first factor is a question of law; the second factor is a question of fact." *Id*. (citing *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004)).

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d at 241-42 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). "A public employee does not speak 'as a citizen' when he makes a statement 'pursuant to [his] official duties.'" *Id*.

"The first requirement that the public employee speak as a citizen helps to ensure that the First Amendment does not 'empower [public employees] to constitutionalize the employee grievance.'" *Rogosich v. Twp. of W. Milford Mun. Utilities Auth.*, Civ. Case No. 12–2916 (FSH), 2013 WL 4047649, at *3 (D.N.J. Aug. 9, 2013) (quoting *Garcetti*, 547 U.S. at 420). Thus, when public employees speak "pursuant to their official duties," their speech does not receive First Amendment protection from "employer discipline." *Garcetti*, 547 U.S. at 421. Courts consider two significant factors when determining whether a public employee has acted as a private citizen: (1) whether the employee expressed her views inside the workplace, and (2) whether her speech concerned the subject matter of her employment. *Id*. at 420-21.

The Amended Complaint fails to allege facts showing that Cherry engaged in protected activity because he was retaliated against for speech he made as a private citizen about a matter of public concern. The Amended Complaint alleges Cherry "objected to Defendants' decision with regard to the [reduction of monthly] in-services" by "voic[ing] his concern about the in-service training to his supervisors, including the Chief, Michael Caputo." (Dkt. No. 3, ¶¶ 17-19.) A fair reading of the Amended Complaint suggests Cherry made the statements at issue to his supervisor(s) at his place of employment in connection with his work-related duties, not as a private citizen.

Even assuming Cherry engaged in any protected activity, the Court nevertheless finds that Plaintiffs have failed to allege facts raising an inference of a causal connection between such activity and the alleged retaliation.

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation.

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal citations and marks omitted).

As the Third Circuit has explained, "for temporal proximity to be probative of causation, the timing of the retaliatory action must be 'unusually suggestive' of retaliatory motive." *Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015) (quoting *Thomas v. Town of Hammonton*, 351 F. 3d 108, 114 (3d Cir. 2003)). In *Hammond*, the Appellant's first alleged protected activity (the filing of a lawsuit against the City) occurred in 2009, but the criminal investigation and employment hearing against him did not occur until nearly four years later, in 2013.  *Id*. The Third Circuit found temporal proximity lacking because "[t]his is simply too great

a passage of time to conclude that these actions were ordered in retaliation for Appellant's decision to file his first lawsuit. *Id*. (citing *Hammonton*, 351 F. 3d at 114 (concluding, in part, that because three weeks had passed between a complaint being filed and a termination letter being issued, the "chronology of events does not provide substantial support for [the plaintiff's] position")).

Here, Cherry's alleged protected activity began "in 2011." (Dkt. No. 3, at ¶¶ 16, 18 ("Beginning in 2011, Defendants prohibited Plaintiff from completing certain in-service training sessions. . . . Plaintiff objected to Defendants' decision with regard to the in-services.") But the first specific act of retaliation alleged in the Amended Complaint occurred "[i]n October of 2013, … [when] Defendant Michael Caputo alleged that Plaintiff was involved in hacking his emails." (*Id*. at ¶ 25.) The other allegedly retaliatory acts underlying Plaintiffs' First Amendment retaliation claim all occurred even later. (*Id*. at p. 13, ¶ 37 ("As a direct result of exercising his free speech, Plaintiff was subjected to adverse employment action and retaliation, specifically constant demeaning and harassing conduct by his superiors, embellished scrutiny of work performed in good faith, false investigations, and premature determinations of the K9 deployment on January 29, 2014.").) The passage of time – at least two years – is simply too great to conclude that these actions were ordered in retaliation for Cherry having "voiced his concern."

Because the Court finds Cherry's alleged complaints regarding the reduction of in-service training were not made as a private citizen about a matter of public concern, and Plaintiffs have failed to establish the requisite causal connection between those comments and the allegedly retaliatory action, Defendants' Motion to Dismiss Count VI of the Amended Complaint is **GRANTED**.

### G.     COUNT VII: PER QUOD

Count VII  asserts a per quod claim on behalf of Cherry's wife, plaintiff Michele Cherry, claiming she "has been and will continue to be deprived of his love, companionship, affection, society, consortium, comfort, marital relations, services, [and] support" as a result of Cherry's "injuries and losses," requiring her "to provide special services and care to him." (Dkt. No. 3 at 14, ¶ 41.)

Defendants argue Plaintiffs' per quod claim must be dismissed because it is procedurally and substantively defective. Procedurally, Defendants point to Plaintiffs' failure to serve Tort Claims Notices prior to commencing this action. Substantively, Defendants argue the Amended Complaint lacks any claim by Cherry which could support a derivative spousal claim. Plaintiffs' opposition makes no effort to address their failure to serve a Notice of Tort Claim as a prerequisite for asserting a per quod claim. (Dkt. No. 12 at pp. 10-11.) Instead, they argue Defendants' breach of contract has caused Cherry to "suffer[] both severe economic damages as well as severe emotional distress," giving rise to a viable per quod claim. (*Id.*)

As discussed above (*see* discussion of Count IV, *supra*), under the New Jersey Tort Claims Act, a claimant who fails to serve a notice of tort claim against a public entity within ninety (90) days of accrual of a cause of action is "forever barred from recovering against a public entity," absent exceptional circumstances. N.J.S.A. 59:1-1. This prohibition applies equally to a spouse asserting a per quod claim. *See Madej v. Doe*, 194 N.J. Super. 580, 586 (Ch. Div. 1984). Because Plaintiffs failed to serve a notice of tort claim, the Court need not address the merits of their per quod claim[3] and Defendants' Motion to Dismiss Count VII with prejudice is **GRANTED**.

---

[3] Even if the Court were to address the merits of Plaintiffs' per quod claim, it would fail, as a matter of law, because the Amended Complaint does not assert any claim which could support a derivative per quod claim. *See Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of*

### H. COUNT VIII: VIOLATION OF 42 U.S.C. § 1983

Cherry alleges the Borough "permitted, encouraged, tolerated, and deliberately acquiesced to an official pattern, practice, and/or custom of its supervising police officers, particularly Defendants Caputo and Anderson, in violating the First Amendment rights of subordinate officers in unlawfully retaliating against the subordinate officer when the officer spoke out about a matter of public concern." (Dkt. No. 3 at 15, ¶ 49.) Cherry points to two (2) separate lawsuits the Borough is and/or was defending which raise similar allegations against Defendants as evidence of the Borough's alleged deliberate indifference to "the abusive and unlawful culture within the Tuckerton Police Department as a result of the conduct of Defendants Caputo and Anderson." (*Id.* at 16, ¶¶ 51-54.) Cherry further alleges "Defendants deliberately and unlawfully failed to properly notify [him] of the [city council] meeting . . . [a]s a result of the [Borough's] unlawful policies, customs, and/or practices . . . ." (*Id.* at ¶¶ 56-57.)

"Local governing bodies … can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute,

---

*Atlantic City*, 32 F. Supp. 2d 753, 769-70 (D.N.J. 1999) (dismissing Section 1983 claim and, necessarily, a derivative per quod claim), *aff'd* 208 F.3d 206 (3d Cir. 2000); *Armstrong v. Sherman*, Civ. No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010) (dismissing per quod claim brought under the New Jersey Civil Rights Act); *Murphy v. Implicito*, 392 N.J. Super. 245, 269-70 (App. Div. 2007) (holding per quod claims are only permissible for contact claim where personal injury results from a breach of contract).

may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. In order to recover under § 1983 against the Borough, Plaintiffs must show that an official policy or practice of the Borough resulted in an unconstitutional deprivation of Cherry's rights. *See Wilson v. Healy*, 63 F. App'x 613, 616 (3d Cir. 2003).

Accepting as true all factual allegations in the Plaintiffs' Amended Complaint and drawing all inferences in the facts alleged in the light most favorable to them, the Court finds Plaintiffs have failed to state a viable *Monell* claim. Initially, the Amended Complaint fails to identify a recognizable federal right of which Cherry has been deprived. (*See* discussion of Counts I, II and VI, *supra*.) Even if it did, the Amended Complaint lacks even the basic allegation that Cherry's alleged deprivation was the result of any specific "policy" or "custom" of the Borough.

A "policy" is made "when a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kates v. Bridgeton Police Dep't*, Civ. A. No. 10–6386 (RMB), 2011 WL 6720497 (D.N.J. Dec. 21, 2011) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). Similarly, a "custom" is an act "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Kates*, Civ. A. No. 10–6386 (RMB), 2011 WL 6720497, at *6 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

Here, Plaintiffs fail to identify any specific policy of the Borough – enacted, proposed, or otherwise – that was responsible for Cherry's alleged constitutional deprivations. The Amended Complaint does not allege either of the individual defendants were "final decisionmakers" themselves, nor that either was acting pursuant to any "final proclamation, policy or edict" issued by such an individual or body. Plaintiffs' reference to the "two other lawsuits" fails to establish,

let alone identify, any policy or custom that resulted in a deprivation of Cherry's constitutional rights. Two isolated lawsuits,[4] without more, fails to suggest the Defendants' conduct was "so widespread as to have the force of law."

Plaintiffs have failed to show that an official policy or practice of the Borough resulted in an unconstitutional deprivation of Cherry's rights and, accordingly, Defendants' Motion to Dismiss Count VIII of the Amended Complaint is **GRANTED**.

I.   COUNT IX: VIOLATION OF N.J.S.A. 10:6-2

Cherry alleges he was subjected to a "continuing course of harassing adverse retaliation" for voicing his concerns about his training to his supervisors that intensified when he "was wrongfully accused by Defendant Caputo of hacking his emails." (Dkt. No. 3 at 17, ¶¶ 59-60.)

Count IX of the Amended Complaint appears to mimic, in sum and substance, the allegations set forth in Count VI (under Section 1983) and fails for the same reasons. "Free speech claims under the New Jersey Constitution are interpreted consistently with free speech claims under the First Amendment." *Grohs v. Holmes*, Civ. No. 13–7870 (KM)(MAH), 2014 WL 4896834, at *13 (D.N.J. Sept. 30, 2014) (quoting *Gomez v. Town of W. New York*, Civ. No. 2:13–689 (WJM), 2013 WL 5937415, at *4 (D.N.J. Nov. 4, 2013)). As the Court has already determined Cherry's alleged complaints regarding the reduction of in-service training were not made as a private citizen about a matter of concern and Plaintiffs failed to establish any causal connection between those complaints and the allegedly retaliatory actions (*see* discussion of Count VI, *supra*), Defendants' Motion to Dismiss Count IX of the Amended Complaint is **GRANTED**.

---

[4] Notably, one of the lawsuits was filed in January 2016, nearly two-years after Cherry was suspended. *See Sanzari v. Borough of Tuckerton*, Docket No. OCN-L-69-16.

**IV.**     **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Counts I, II, IV, VI – IX, and all claims in Count V that accrued prior to January 27, 2013 and after February 4, 2014 are **DISMISSED**. An appropriate order will follow.

**Date: October 17, 2016**                                    */s/ Brian R. Martinotti*
                                                              **HON. BRIAN R. MARTINOTTI**
                                                              **UNITED STATES DISTRICT JUDGE**